1010



**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| TONY AND LAUREN FITZGERALD, individually and on behalf of all others similarly situated, <br><br>     Plaintiffs, <br>  v. <br><br> ELECTROLUX HOME PRODUCTS, INC., <br><br>     Defendant. | CLASS ACTION <br><br> DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

1. Plaintiffs Tony and Lauren Fitzgerald ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant Electrolux Home Products, Inc. ("Electrolux"). The following allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

2. Plaintiffs represent a proposed class of thousands of consumers who owned and used residential dishwashers designed and manufactured by Electrolux, and sold under the Frigidaire or Electrolux brand names. These dishwashers are dangerously defective in that their electrical systems overheat and catch fire, burning holes through the dishwasher, causing flooding, or causing the entire dishwasher and surrounding area to ignite and burn.

3. The magnitude of the health and safety hazard the defect poses is exemplified by this picture of a Frigidaire dishwasher that caused significant damage to one family's home, personal property, and the family's pets' health as a result of the smoke and fire:



4. Other consumers' experiences are equally alarming and illustrate the degree to which these dishwashers pose an unreasonable safety hazard.

5. Electrolux has known of this dangerous defect for years; however, to date it has failed to recall or otherwise inform the public that its dishwashers are defective and are serious safety risk.

6. Electrolux's conduct violates well-established contract and tort laws. Plaintiffs bring this suit on behalf of themselves and similarly situated consumers, seeking damages and appropriate equitable relief, including an order enjoining Electrolux from selling these dishwashers without disclosing their defect to its consumers.

## PARTIES

7. Plaintiffs Tony and Lauren Fitzgerald are residents of Hopewell, Virginia, and citizens of the Commonwealth of Virginia.

8. Defendant Electrolux Home Products, Inc. is a Delaware corporation that maintains its principal place of business at 10200 David Taylor Drive, Charlotte, North Carolina 28262.

2

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from Electrolux, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

10.     This Court has jurisdiction over Electrolux because it is registered to conduct business in Virginia, has sufficient minimum contacts in Virginia, and otherwise intentionally avails itself of the markets within Virginia through the promotion, sale, marketing and distribution of its products, such that the exercise of jurisdiction by this Court is proper and necessary.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Electrolux conducts substantial business in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

12.     Electrolux is the world's second-largest appliance maker by units sold. It sells under a variety of brand names in the United States, including under its popular Frigidaire brand.

13.     Dishwashers are common household appliances that wash, rinse, and dry kitchenware using a mix of detergent and water. Typically, dishwashers use a heating element—a wire coil that converts electrical energy passing through it into heat—to heat the wash solution and to dry the dishes. This heating element is mounted at the bottom of the dishwasher tub and is held in place by metal brackets. Below are images of heating elements in Frigidaire dishwashers:



14.     Owners of the dishwashers that are the subject of this lawsuit control the dishwasher's functions through an electronic control panel located at the front of the dishwasher cabinet. The control panel is directly connected to the incoming power supply through a junction box located at the bottom of the dishwasher.  The control is the power source for all of the electrical components in the dishwasher, including the heating element, which is connected to the control through a second power line.  When heating water, the electrical draw can be as high as 900 watts in Frigidaire models. An exemplar diagram of a dishwasher's elements appears below.



4

15. In addition to these standard items, Electrolux also promotes special features on its dishwashers that actively encourage owners to use their dishwashers when they are asleep or away from home. For example, many Electrolux models contain a Delay Start option that delays the beginning of the cycle for six or more hours, so that the user can run the dishwasher without being present.

16. Dishwashers, including Electrolux's, are expected to function properly for at least nine to thirteen years. The National Association of Home Builders reported in a 2007 study, conducted with Bank of America Home Equity, that the life expectancy of dishwash0ers is nine years. The Association of Home Appliance Manufacturers, of which Electrolux is a member, cites a 1996 National Family Opinion, Inc. survey stating that the life expectancy of home dishwashers is thirteen years.

A. **The Defects at issue in the subject Dishwashers are material and present a safety hazard.**

17. Despite these advanced features, Electrolux dishwashers are defective because individual components in the electrical system overheat and in some cases, fail catastrophically. This is because of a design defect, manufacturing defect, or defect in the materials used in manufacturing the machines. When the defective electrical system overheats, it can cause the control board, heating element, or connected wiring to short circuit or catch fire without warning. Overheating may also cause the heating element to warp or sag, causing it to burn through the bottom of dishwasher tub. Many consumers have reported the element burning a crack or hole in the tub, causing significant flooding when the dishwasher is operating. This flooding creates its own risk of a short circuit and fire when water comes into contact with exposed electrical components.

18.     Below are consumer complaints (as submitted, uncorrected for grammar or spelling) and corresponding images of damage caused by the defective electrical system in Electrolux dishwashers submitted to the Consumer Product Safety Commission:

> LFBD2409: Dishwasher stopped working and the smell of burning plastic was all over the house. The wires in the junction box under the dishwasher are all charred. The circuit breaker on the main panel tripped as a result. From the photos you can see the damage.



Report No. 20130923-BD2E5-2147451613
http://www.saferproducts.gov/ViewIncident/1357307 (last visited Oct. 27, 2015).

> Frigidaire FDB1100RHM: Purchased the Frigidaire dishwasher Model Number: FDB1100RHM in October 2009. On August 5, my wife returned home five hours later and found the dishwasher stuck in cycle. As a result the heat element continued to heat and the poor design resulted in the collapse of the element and it burned two holes in the tub. This created a potential fire hazard if we had been away     from     the     house     for     an     extended     period     of     time
>
> After receiving the response from Frigidaire that offered little solution, I shopped this weekend to find the exact diswasher has had a design change in the heating element. They moved from a large square element to a small, better supported round element. This change would have prevented the collapes of my element.
>
> Frididaire has not accepted any responsibility for the results, have offered little response. I believe that this design problem could creat problems for other owners of the older model. I have photos of the damage and the new model change. I would like to provide to you for your review.



Report No. 20110815-3DF7B-2147476247
http://www.saferproducts.gov/ViewIncident/1196828 (last visited Oct. 27, 2015).

FDBB4365FBV0: The dishwasher had been in use for approx. 60 - 90 minutes and it was on the drying cycle. when the consumer's husband noticed a burning odor in their home. The consumer also noticed the odor and saw that the kitchen began to fill with smoke. The smoke appeared to be emitting from the bottom of the dishwasher, but it was difficult to see, due to the amount of smoke in the kitchen.

Both consumer's saw sparks emitting from the bottom of the dishwasher and when they opened the dishwasher door they saw flames in the bottom of the dishwasher. The husband unplugged the dishwasher from the wall outlet and ran to get the fire extinguisher. The husband sprayed the extinguisher on the flames and he was able to put them out. The inside of the dishwasher is grey, but it was discolored from the fire.

The consumer said that it appeared that the fire started underneath the dishwasher and burned up through the bottom of it, before the husband put it out. The consumer said that the heating coil remained intact. There were some plastic items in the top rack of the dishwasher, but they also were not affected by the fire. The floor of the dishwasher tub melted and had actually been in flames.

(12/26/13) The consumer called the manufacturer and reported the incident to them. She spoke with [REDACTED] and the consumer was given a Complaint # [REDACTED].

The consumer noted that she uses the dishwasher daily most of the time. The dishwasher has never been serviced for any prior reasons.



Report No. 20131227-D3255-1377604
http://www.saferproducts.gov/ViewIncident/1377604 (last visited Oct. 27, 2015).

FDB520RHB2A: The consumer stated that he was using his dishwasher and the heating element melted the plastic causing a leak from a 3" (in length) crack on the left rear corner of the dishwasher. The consumer stated that water leaked underneath the dishwasher and went through the wood floor leaking onto the basement. The consumer stated that there was flood in the basement do to the leak.

The consumer stated that he suffered damages to his wood floor and the basement ceiling. The consumer stated that he also believe that this was a fire hazard because there was a problem with the heating element that it's becoming so hot that may cause a fire.

The consumer stated that no one was injured.

The consumer stated that he contacted the manufacturer; they informed him that there was no recall and they could not provide any assistance.

The consumer stated that he believed that this product should be investigated do to the fire hazard that it poses to consumers.



Report No. 20130531-02B1A-1330960
http://www.saferproducts.gov/ViewIncident/1330960 (last visited Oct. 27, 2015).

**B.      Electrolux had actual knowledge of the Dishwashers' defects through warranty claims, complaints, recalls in other countries, and other pending lawsuits.**

19.      Before placing its dishwashers into the stream of commerce, Electrolux had actual knowledge that they contained a defective electrical system that causes fires and flooding, and thus create an unreasonable risk of property damage and personal injury or death.

20.      Electrolux knew of this defect prior to sale because of the variety of early warning systems and statistical analyses that it uses to detect problems before they can affect consumers. Electrolux has a robust quality department that conducts field trials during production and before sale to improve product performance, cost-effectiveness, and productivity. It also actively collects and monitors performance information in a database and works with management to

9

implement quality improvements. Electrolux also has a quality assurance system with which it performs internal audits on its own systems, and external audits on new and existing suppliers. When problems are detected, Electrolux has quality work groups resolve design, manufacturing, and other issues through root cause analyses and corrective actions. The results of these tests and audits would have informed Electrolux prior to sale that its dishwashers were defective.

21. In addition, Electrolux also conducts a significant amount of after-market testing that would have informed it that its dishwashers had a defective electrical system. Its quality teams monitor warranty statistics and the service call rates in order to detect problems as soon as customers begin to experience them. They also track returned products and parts to investigate product faults in an effort to reduce the warranty rate. Quality engineers also monitor customer complaints from Electrolux's call center and other sources to detect increases in problems. Given that the electrical systems in its dishwashers can fail quite rapidly, after-market testing would have also informed Electrolux that the dishwashers were defective.

22. Electrolux also had actual knowledge of the defect because it received consumer complaints, both directly or indirectly, at least since 2007. For example, a review of complaints submitted to ConsumerAffairs.com at http://www.consumeraffairs.com/homeowners/ frigidaire_dishwashers.html (last visited Oct. 27, 2015) demonstrates that Electrolux dishwashers' electrical system can fail as early as 1-2 years after purchase:

> I bought a Frigidaire Dishwasher and after two years of use, it caught fire. I unloaded the unit and then closed the door and left the room. The next thing I knew, the smoke detector was going off and the kitchen was filled with white smoke. The unit was making a sizzling noise. The scary thing here was that this happened without even turing the unit on. I am glad that I did not leave the house, it could have all been gone!
> (Lisa of Sioux City, Iowa – Dec. 7, 2007)

> I purchased a Fridgedaire dishwasher in November 2006. On October 2007 it caught fire and burned my house down along with my dog. It was not

10

running a wash at the time. I have been told that it was the control panel that caught fire. I lost my home, my possessions, and my pet of 13 years.
I have lost everything. I had insurance that covered most of the loss, but I have since had to move. I cannot return to my home of 20 years.
(Carla of Azle, Texas – Dec. 28, 2007)

Our frigidaire dishwaher caught on fire tonight. There was a load pop and when we investigated the noise we found smoke pouring out of the door of the dishwasher. It was not even in use when this happened. We were just lucky that we were at home so I could turn off the breaker.

It seems the the timers fail, blow up and catch on fire. This is what seemed to happened with ours. This issue needs to be addressed by frigidiare. We were lucky as we will just be out the price of a new dishwasher. Thank god we were home at the time of the melt down. I will be interested in taking this further if frigidaire does not give do anything about what happened with our dishwasher. They need to address this issue. Dishwasher: Professional Series Age: Less than 5 years Loud pop an smoke poured from the door. The dishwasher was not in use when it caught on fire. Circiut breaker did not blow, it was a 15 amp breaker.
We had no damage but we were home to turn off the breaker to the dishwasher.
(James of Fort Worth, Texas – July 21, 2008)

Frigidaire Gallery dishwasher caught on fire! We normally do not think anything of starting the dishwasher before we leave the house or before we go to bed. Never again! Luckily, we were home, awake and in the kitchen when there was a loud pop followed by smoke and flames in the control panel. It took a few blasts from our fire extinguisher into the vent panel on the door to put out the flames. I am sure that had we not been home, our house would have burned down and our three wonderful dogs would have perished. Shame on Frigidaire for building a product like this!
(Michael of Canton, Ohio – October 11, 2008)

I purchased a Frigidaire dishwasher on 01/26/2008 and it began leaking water on 10/17/08. I called for warranty repair and a serviceman came out on 10/21/08. He stated that there was a defect in the heating element that had melted the tub and that I would be getting a new dishwasher. When the serviceman (A&E Factory Service) called into Frigidaire for Frefu, he was informed that they now replace the heating element and tub and do not replace the whole dishwasher with a new unit. I was fine with that and was told that the parts would be in by 10/24/08 and delivered directly from Frigidaire to my property. After not receiving any parts or calls, I contacted A&E regarding the parts and they showed that the parts were on backorder with Frigidaire. I then contacted Frigidaire on the same day and was told to expect the parts on or before 10/31/08. I am still awaiting the parts. This is ridiculous!!

11

This dishwasher is in a condominium owned by us and we may loose our tenant over this.
(Lisa of Rockwall, Texas – Nov. 13, 2008)

I purchased a Frigidare Gallery series dishwasher in 2005.It has been sitting in my kitchen empty and unplugged for a year now.The heating element in this diswasher never shut off. It just sat there geting hotter and hotter.Many of the interior parts melted down and the smell, is what drew my attention to the problem. I am fortunate that I was home at the time or I am certian that it would of eventually caught fire. I contacted the manufacturer to determine if there had been a recall on this dishwasher and was told that they had no record of this happening before.
(Cheryl of Valley Springs, California – Dec. 16, 2008)

Frigidaire plastic dishwasher tub caught fire! My dishwasher is 10 years old. White was the manufacturer then, but my in-laws have a Kenmore that's less than 5 years with the same interior parts. I learned how to maintain it myself - unclog the sprayer arms and make sure the heating element is in the clips and not warping or touching the plastic tub. The dishwasher has worked well enough for its lifetime. I started a wash cycle one night before going to bed. I woke to my alarm clock the next morning and heard a hissing noise. I found a flood in my kitchen! The water feed line to my refrigerator sprung a leak behind the dishwasher. There was a funny burnt smell in the air, which I figured the dishwasher motor may have suffered water damage while running.

After cleaning up the mess, I reached for a clean bowl in the dishwasher. It finished its cycle, as expected, and the clean light was on. I found everything inside it was covered with soot and there is a hole 4 inches wide and nearly a foot high burned through the back of the tub! The heater tube broke apart. The heating element wire expanded out of the tube and ignited the plastic tub! The burning plastic dripped to the floor, passing the plastic water feed line and burning a hole in it which apparently extinguished the fire. The dishwasher continued on until its cycle completed. The dishwasher is properly connected on its own 15amp circuit. A GFCI is not required.
(Robert of Sloatsburg, NY – April 17, 2009)

About 5 years ago, our dishwasher caught fire. The warranty was over but as soon as we called the company, no further questions were asked and they shipped a new Frigidaire dishwasher the very next day. They did not want to old one, see it or have me send a purchase receipt. I told my wife, this is suspicious and they are probably getting many serious calls and do not want government-imposed recall problems from complaints.

Now 5 years later, we hear of this recall during this past summer on the same problem. Do not use the heating elements to dry your dishes! What is happening is the heating element becomes extremely warped, two sides warp

upwards and the other two sides warp downward, and burn into the plastic tub and catch fire. These are cheap elements without amperage load protection.

Marketing engineering is what I call it - build cheap so that we have to buy a new one every 7 years. Obviously, there is no money for appliances that last 20 to 30 years as was the previous appliances I had. Corporate America wants bigger profit margins and more sales. Filing legal action is what is needed with media coverage for free publicity seems like the only avenue to go these days.
(Bob of Ottawa, Ontario – October 25, 2010)

We awake this morning to a smoke odor in our home. The dishwasher was reading ERR. When we opened the dishwasher, it was evident that the heating element did not shut off, which caused a small fire in the dishwasher. It melted the bottom sprayer and dishwasher safe plastics on the bottom shelf. The fire was hot enough to melt an entire water bottle, which has been washed this way over hundred times.
(Lisa of Southwick, MA – September 23, 2011)

23.    Electrolux recalled dishwashers outside of the United States because of concerns about the dishwashers catching on fire.  Facing reports of similar issues with its dishwashers in Australia, Electrolux recalled several models in 2007 in conjunction with the Australian Competition and Consumer Commission.  It explained that a "wire connector within the appliance may, in extreme cases, overheat and cause a small self-contained fire or melting of plastic components within the control panel."  https://www.recalls.gov.au/content/index.phtml/ itemId/953307 (last visited Oct. 27, 2015).  That same year, Electrolux also recalled dishwashers in the United Kingdom citing a "potential risk of fire" from a purchased connector component. United Kingdom Association of Fire Investigators, http://www.uk-afi.org/product-recall/2007- 06-15/aeg-electrolux-and-zanussi-electrolux-dishwashers (last visited Oct. 27, 2015).  In Australia, Electrolux conducted a follow-up recall in 2013 stating that "an electrical component used in the previous recall may overheat."
https://www.recalls.gov.au/content/index.phtml/itemId/1050863 (last visited Oct. 27, 2015).

Despite these recalls abroad, upon information and belief, Electrolux has not conducted a similar recall for dishwashers in the United States.

24. Electrolux was also aware at the time of sale that its competitors suffered similar problems with components overheating, resulting in fires. Unlike Electrolux however, those manufacturers instituted recalls of millions of dishwashers when faced with problems. For example, in early 2005, General Electric conducted a safety recall for 70,000 dishwashers because of problems with a connector that "can short-circuit and overheat during normal use" posing a fire hazard to consumers. In 2009, Bosch recalled about 500,000 dishwashers because "[a]n electrical component in certain model dishwasher can overheat, posing a fire hazard to consumers." Whirlpool conducted a safety recall of about 1.7 million dishwashers in 2010 because an "electrical failure in the dishwasher's heating element can pose a serious fire hazard." Similarly, in August 2012, General Electric recalled about 1.3 million dishwashers, stating that "an electrical failure in the heating element can pose a fire hazard." Overall, the Consumer Product Safety Commission reported that dishwashers had caused about 400 residential structure fires and 20 fire-related injuries in 2012. http://www.cpsc.gov//Global/Research-and-Statistics/Injury-Statistics/Fuel-Lighters-and-Fireworks/2010-2012-Residential-Fire-Loss-Estimates.pdf (last visited Oct. 27, 2015).

25. In addition, Electrolux has been on notice of the defective electrical system in its dishwashers as a result of subrogation claims filed against it as a result of dishwasher fires. For example, in 2007, an insurance company filed suit against Electrolux as a result of a dishwasher fire that caused over $75,000 in damage to the home of Robert and Susan Furlong. *See Commerce Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:07-cv-11013 (D. Mass. 2007); *see also Evans v. Electrolux Home Prods., Inc.*, No. 4:07-cv-01782 (M.D. Pa. 2007) (dishwasher fire

in 2005); *Hanover Ins. Co. v. Electrolux Home Prods., Inc.*, No. 8:10-cv-2052 (M.D. Fla. 2010) (dishwasher fire in 2008); *Greater New York Mut. Ins. v. Electrolux Home Prods., Inc.*, No. 3:12-cv-01266 (D. Conn. 2012) (dishwasher fire in 2009).

      **C.**      **The Defects pose real and actual safety risks to consumers and their property.**

      26.      As recall notices posted by Electrolux, the Consumer Product Safety Commission, and by various manufacturers have acknowledged, a defective electrical system in a dishwasher poses a serious safety hazard to consumers. Also, the defective electrical system causes Electrolux dishwashers to require expensive repairs or catastrophically fail well before the typical life expectancy of a dishwasher. As a result, a reasonable person deciding whether to purchase an Electrolux dishwasher would want to know about the defective electrical system so that they could decide whether they would pay less for an Electrolux dishwasher, or forego purchasing one altogether.

      27.      As discussed above, when the electrical systems in Electrolux dishwasher fail, they are prone to ignite and catch fire, which creates a serious safety risk and damages the dishwasher itself and in many cases surrounding property. Recall notices from General Electric, Whirlpool, and other manufacturers acknowledge that electrical system failures can result in short-circuits, overheating, and fire. ABC News has also reported that fire investigators believe that a fire "in or near" a Frigidaire dishwasher may have caused the death of a woman in Oregon. Joe Ducey, *Is Your Dishwasher a Safety Risk?*, ABC News (Feb. 1, 2012, 6:11 PM), http://www.abc15.com/news/local-news/investigations/is-your-dishwasher-a-fire-risk (last visited Oct. 27, 2015).

      28.      Likewise, because of the damage that a failing electrical system can do to the integrity of the dishwasher cabinet, consumers have reported significant property damage from

flooding. Because this flooding occurs near exposed electrical components in the dishwasher, electrical outlets, and circuit boxes, flooding may also create a risk of shorting, fire, and electrocution. The U.S. Department of Housing and Urban Development lists "Water Leaks On or Near Electrical Equipment" as an Exigent Health and Safety Hazard that threatens life, health, and safety. Dep't of Hous. and Urban Dev. Notification of Exigent and Fire Safety Hazards Observed, http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_26407.pdf (last accessed Oct. 27, 2015).

**D.      Electrolux failed to disclose and otherwise concealed the material safety risk form its consumers.**

29.      Electrolux continuously failed to disclose this defect  to the public despite its testing of the dishwashers, customer complaints, replacement parts sales data, aggregate data from dishwasher dealers, industry-wide recalls, and other sources.

30.      Electrolux knew or should have known that reasonable consumers were unaware of this latent dangerous defect and that consumers reasonably expected the dishwashers to clean dishes during their effective life use without catching fire and exposing them and their property to serious risk of harm.

31.      Instead of disclosing the material safety defects, Electrolux otherwise informed its consumers that its Dishwashers were safe for use, incorporating certain features such as a Delay Start feature, which consumers would use under the expectation that the dishwashers would be safe to use.

32.      The defects—which are inherent at the point of sale of the machines—are not reasonably discoverable by dishwasher owners until they experience the results of the defect, and are exposed to the safety risks. As a result of Electrolux's inaction and silence, consumers are unaware that they have purchased and continue to have unsafe and unreliable dishwashers, while

Electrolux continues to profit from the sale of its dishwashers to consumers. Consumers would not have purchased Electrolux dishwashers, or they would have paid far less for them, had they known they were prone to flooding and/or causing fires.

### PLAINTIFFS' INDIVIDUAL FACTS

**A.    Plaintiffs Tony and Lauren Fitzgerald**

33.    Plaintiffs purchased a home in 2009 in which a Frigidaire dishwasher manufactured by Electrolux, model number FDB1050REB2 and serial number TH72932831 was installed. The dishwasher was installed new in the home in late 2007 or early 2008. In January 2013, Mr. and Ms. Fitzgerald started the dishwasher just before going to bed, at approximately midnight. About 1:00 a.m., they were awakened by their smoke detector alarms. The entire house smelled of burning plastic, and Mr. and Ms. Fitzgerald heard sizzling as they vacated the house.  When firefighters extinguished the fire, they identified the source of the fire as starting under the dishwasher. In addition to fire damage, a hole was melted in the tub, which led to the flooding of their kitchen.

34.    Below are photographs of the Fitzgerald's Electrolux dishwasher:



35. Following the fire, both Mr. and Mrs. Fitzgerald contacted Electrolux about their experience but no agreement was reached. Mr. and Ms. Fitzgerald would not have purchased their home with the dishwasher for the same sales price or would have immediately replaced the "new" dishwasher had Electrolux disclosed that the element of the dishwasher has a defect that causes it to overheat, sag, burn, and melt the inner tub. They did not receive the benefit of their bargain.

## CLASS ACTION ALLEGATIONS

36. Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Electrolux on their own behalf and on behalf of the National Class (collectively the "Classes") as defined below:

> **The National Damages Class consists of:**
> During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defect.

> **The National Replacement Class consists of:**
> During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect.

Plaintiffs also bring this case on behalf of the State Subclasses listed below, and propose these subclasses in the interest of judicial economy and efficiency. At the class certification stage, in response to discovery and pursuant to any instruction by the Court, the Plaintiffs may modify these classes in the future.

> **The Virginia Damages Class consists of:**
> During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired in the State of Virginia an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household

purposes having the Defect and who have incurred property damage as a result of the Defect.

**The Virginia Replacement Class consists of:**
During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired in the State of Virginia an Electrolux designed and/or manufactured dishwasher primarily for personal, family, or household purposes having the Defect.

37. Excluded from the Class are (a) any Judge or Magistrate presiding over this action and Members of their families; (b) Electrolux and any entity in which Electrolux has a controlling interest or which has a controlling interest in Electrolux; (b) the officers and directors of Electrolux; and (d) Electrolux's legal representatives, assigns and successors; and (e) all persons who properly execute and file a timely request for exclusion from the Class or from any Court-approved Subclass.

38. Plaintiffs meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

39. **Numerosity**: While the exact number of Members cannot be determined yet, the Class consists at a minimum of thousands of people dispersed throughout the United States and throughout the States, such that joinder of all Members is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Electrolux.

40. **Commonality**: Common questions of law and fact exist as to all Members of the Class. Among the questions of law and fact common to the Class are:

a. Whether the dishwashers designed, manufactured and sold by Electrolux pose a safety risk to consumers;

b. Whether Electrolux knew, or should have known, that the dishwashers it sold into the stream of commerce posed an unreasonable safety risk to consumers;

c. Whether Electrolux concealed the safety risk its dishwashers posed to consumers;

d.  Whether the safety risk the dishwashers pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase a dishwasher;

e.  Whether the dishwashers designed and manufactured by Electrolux possess any material defect;

f.  Whether the dishwashers contain a defect presenting an unreasonable risk of melting, burning, flooding and fire;

g.  Whether Electrolux knew, or should have known, that the dishwashers contained A defect when the it placed the dishwashers into the stream of commerce;

h.  Whether Electrolux concealed the defect from consumers;

i.  Whether the existence of the defect is a material fact that reasonable purchasers would have considered in deciding whether to purchase a dishwasher for in home use;

j.  Whether the dishwashers designed and manufactured by Electrolux are of merchantable quality;

k.  Whether the dishwashers designed and manufactured by Electrolux are likely to pose a serious safety risk to consumers before the end of their reasonable expected lives;

l.  Whether the dishwashers are likely to burn, melt, cause flooding, catch on fire or fail before the end of their reasonable expected life;

m.  Whether the defect in Electrolux dishwashers resulted from Electrolux's negligence;

n.  Whether Electrolux breached express warranties relating to the Electrolux dishwashers by failing to recall, replace, repair and/or correct the defect in the dishwashers;

o.  Whether Electrolux breached implied warranties of merchantability relating to the dishwashers;

p.  Whether Electrolux misrepresented the characteristics, qualities and capabilities of the dishwashers;

q.  Whether Electrolux knew, or in the exercise of reasonable care, should have known of the Defect prior to distributing the dishwashers to Plaintiffs and Class Members;

r.      Whether Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and Class Members material information regarding the defect;

s.      Whether Electrolux failed to warn consumers regarding the defective dishwashers;

t.      Whether Electrolux made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connection with the sale of the dishwashers in its dishwasher literature and on its website, including those relating to standards, use and reliability and otherwise engaged in unfair and deceptive trade practices pertaining to the dishwashers;

u.      Whether Electrolux was unjustly enriched as a result of selling the defective dishwashers;

v.      Whether Electrolux should be ordered to disgorge all or part of the profits it received from the sale of the defective dishwashers;

w.      Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

x.      Whether Plaintiffs and Class Members are entitled to replacement of their defective dishwashers;

y.      Whether Plaintiffs and Class Members are entitled to equitable relief, including an injunction and requiring that Electrolux engage in a corrective notice campaign and/or a recall of the defective dishwashers; and

z.      Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

41.   **Typicality**:  Plaintiffs have substantially the same interest in this matter as all other Class Members, and their claims arise out of the same set of facts and conduct as all other Class Members.  Plaintiffs and all Class Members own or owned a dishwasher designed and/or manufactured by Electrolux with uniform defect that makes the dishwashers immediately dangerous upon purchase and causes them to fail within their expected useful lives and burn, melt, catch on fire, and flood consumers' homes.  All of the claims of Plaintiffs and Class Members arise out of Electrolux's placement into the marketplace of a dishwasher it knew was defective and caused a safety risk to consumers and from Electrolux's failure to disclose those

known safety risks and the defect. Also common to Plaintiffs' and Class Members' claims is Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective dishwashers, Electrolux's conduct in concealing the defect in the dishwashers, and Plaintiffs' and Class Members' purchase of the dishwashers.

42. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

43. The elements of Rule 23(b)(2) are met. Electrolux will continue to commit the violations alleged, and the Members of the Class and the general public will continue to remain at an unreasonable and serious safety and property damage risk as a result of the defect. Electrolux has acted and refused to act on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

44. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Electrolux, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is furthermore not

22

efficient, timely or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresee little difficulty in the management of this case as a class action.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

45.     The claims alleged herein accrued upon discovery of the defective nature of the dishwashers. Because the defect alleged herein is hidden and Electrolux took steps to either conceal or fail to disclose the true, character, nature and quality of the dishwashers, Plaintiffs and Class Members did not discover and could not have discovered it through reasonable and diligent investigation.

46.     Any applicable statutes of limitations have been tolled by Electrolux's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing. Plaintiffs and Class Members could not have reasonably discovered the true defective nature of their dishwashers until such time as the defect manifested themselves by destroying the dishwashers and/or causing flooding or fire. As a result of Electrolux's active concealment of the defect and/or failure to inform Plaintiffs and Class Members of the defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

47.     Alternatively, the facts alleged above give rise to estoppel. Electrolux has actively concealed the defective nature of the dishwashers. Electrolux was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality and nature of the dishwashers, particularly that they posed a serious risk to life and property. At all relevant

times, and continuing to this day, Electrolux knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the dishwashers. Given Electrolux's failure to disclose this non-public information about the defective nature of the dishwashers—information over which it had exclusive control—and because Plaintiffs and Class Members could not reasonably have known that the dishwashers were thereby defective, Plaintiffs and Class Members reasonably relied on Electrolux's affirmative and/or ongoing concealment. Based on the foregoing, Electrolux is estopped from prevailing on any statute of limitations defense in this action.

48.     Additionally, Electrolux is estopped from raising any defense of laches due to its own unclean hands as alleged herein.

### FIRST CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
### (Individually and on Behalf of the National Classes)

49.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

50.     The implied warranty of merchantability included with the sale of each Electrolux dishwasher meant that Electrolux warranted that its dishwashers would be merchantable, fit for the ordinary purposes for which dishwashers are used, pass without objection in the trade, be of fair average quality, and conform to promises and affirmations of fact made on the container and label. This implied warranty of merchantability is part of the basis for the bargain between Electrolux and Plaintiffs and Class Members.

51.     At the time of delivery however, Electrolux breached the implied warranty of merchantability because its dishwashers were defective as alleged above, posed serious safety risks at the time they were sold, would not pass without objection, are not fit for the ordinary

24

purpose of safely washing dishes in a residential setting, and failed to conform to the standard performance of like products used in the trade.

52.    Within a reasonable amount of time after the defect manifested itself to Plaintiffs and Class Members, Electrolux received notice of its breach of implied warranty, as described herein.  In addition, Electrolux received notice of its breach of implied warranty by virtue of its knowledge of the defect.  Electrolux knew, or in the exercise of reasonable care should have known, that the dishwashers posed safety risks and were defective prior to sale of the dishwashers to Plaintiffs and Class Members.

53.    Any implied warranty limitation cannot be enforced here because it is unconscionable. A substantial disparity in the parties' relative bargaining power existed such that Plaintiffs and Class Members were unable to derive a substantial benefit from their dishwasher warranties. A disparity existed because Electrolux was aware that its dishwashers were inherently defective; Plaintiffs and the Class had no notice or ability to detect the problem; and Electrolux knew that Plaintiffs and the Class would bear the cost of correcting any defect. In this case, the disparity was increased by Electrolux's knowledge and failure to disclose that the defect would substantially limit the dishwasher's intended use and could cause catastrophic failures.

54.    The element of privity, if applicable here, exists because Electrolux had direct written communications with Plaintiffs and the Class Members regarding the dishwashers in the form of warranty forms, registration cards, or similar documents; Electrolux advertised the machines for sale via had direct communications with Plaintiffs and Class Members regarding the dishwashers through television, newspaper, the internet, magazine advertisements, and the like; the dealers who sold the dishwashers to Plaintiffs and Class Members are Electrolux's

agents; Electrolux entered into contracts with Plaintiffs and Class Members through warranties; and Plaintiffs and Class Members are third-party beneficiaries of warranties that ran from Electrolux to their dealer-agents.   Further, Electrolux designed and manufactured the dishwashers intending Plaintiffs and Class Members to be the ultimate users of the dishwashers.

55.     As a direct and proximate result of Electrolux's breach of its implied warranties Plaintiffs and Class Members purchased unsafe products which could not be used for their intended use of washing dishes in a residential setting, and have been damaged.  Plaintiffs and Class Members seek damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY - DESIGN DEFECT
### (Individually and on Behalf of the Virginia Damages Class)

56.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

57.     Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the dishwashers at issue herein.

58.     Electrolux's dishwashers were expected to and did reach the Plaintiffs and Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

59.     The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

60. Plaintiffs and Class Members used the subject dishwashers in a manner reasonably intended by Defendant.

61. The dishwashers were defective because they were not safe for ordinary and intended use; Electrolux failed to provide Plaintiffs and Class Members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the dishwashers; the dishwashers contained material design defect and were not reasonably safe due to such defect; the design, methods of manufacture and testing of the dishwashers did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the dishwashers were manufactured; and at the time the dishwashers left Electrolux's control, the foreseeable risks associated with the dishwashers' design exceeded the benefits associated with that design.

62. Plaintiffs and Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition

63. Defendant acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling dishwashers known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew or should have known that the defect would cause their dishwashers to fail, combust, catch fire, cause flooding, damage the dishwasher and other property, and threaten the personal safety of consumers. Electrolux knew or was repeatedly informed of the serious defect, yet failed to take any remedial action and instead continued to sell this defective product. Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Class Members seek exemplary or punitive damages.

**THIRD CAUSE OF ACTION**
**STRICT LIABILITY – FAILURE TO WARN**
**(Individually and on Behalf of the Virginia Damages Class)**

64.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

65.     The defective dishwashers were designed, manufactured and sold by Electrolux in the regular course of business and were expected to and did reach Plaintiffs and Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

66.     The dishwashers were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, resulting in flooding or fire.

67.     Electrolux had no reason to believe that consumers of its dishwashers would be aware of the foreseeable harm associated with use of them.

68.     Prior to and after distributing the dishwashers to Plaintiffs and Class Members, Electrolux had a legal duty to warn them about the defect in the dishwashers and the dangers that such defect would pose.

69.     Prior to and after distributing the dishwashers to Plaintiffs and Class Members, Electrolux and their agents who sold or serviced the dishwashers failed to warn Plaintiffs and Class Members of the defect.

70.     As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the dishwashers, Plaintiffs and Class Members suffered property damage and other incidental and consequential damages.

71.     Defendants acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling dishwashers known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew that the defect would cause their dishwashers to fail, combust, catch fire, melt, cause flooding, damage the dishwasher and other property, and could threaten the personal safety of consumers. Electrolux knew of, and was repeatedly informed of, this serious defect, yet failed to take any remedial action and instead continued to sell this defective product. Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Class Members seek exemplary or punitive damages.

## FOURTH CAUSE OF ACTION
### NEGLIGENCE
**(Individually and on Behalf of the Virginia Damages Class)**

72.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

73.     Electrolux owed a duty to Plaintiffs and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell the dishwashers with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class Members from foreseeable and unreasonable risk of harm.   Electrolux breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the dishwashers.

74.     Electrolux unreasonably failed to provide appropriate and adequate warnings and instructions about its defective dishwashers, and this failure was a proximate cause of the harm for which damages are sought.  In addition, at the time the dishwashers left its control, Electrolux knew, or in the exercise of reasonable care should have known, its defective dishwashers posed a substantial risk of harm to the life and property of its customers. Electrolux knew, or in the

exercise of reasonable care should have known, the dishwashers they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, created an unreasonable safety risk and would fail to perform as intended.

75.     Electrolux acted unreasonably in designing the dishwashers, and this conduct was a proximate cause of the harm for which damages are sought.  Further, at the time the dishwashers left the control of Electrolux, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the dishwashers. Furthermore, at the time the dishwashers left the control of the Electrolux, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a dishwasher of this design.

76.     Electrolux knew, or in the exercise of reasonable care should have known, that the dishwashers created unreasonable safety risks.  Electrolux further knew, or in the exercise of reasonable care should have known, that the dishwashers could cause property damage, personal injury, and/or death.

77.     Based on this knowledge, Electrolux had a duty to disclose to the Plaintiffs and Class Members the serious safety risks posed by the dishwashers and a duty to disclose the defective nature of the dishwashers.

78.     Electrolux had a further duty not to put the defective dishwashers on the market and has a continuing duty to replace its unsafe dishwashers, remove its unsafe dishwashers from the market and seek a recall from consumers.

79.    Electrolux failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the dishwashers by, among other things, failing to design and manufacture the dishwashers in a manner to ensure that, under normal intended usage, they would not pose unreasonable risk to life and property.

80.    Electrolux failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, Plaintiffs and Class Members of the defect in the dishwashers.

81.    Electrolux failed to exercise reasonable care when it knew of the safety risks the dishwashers posed and actively concealed those risks from Plaintiffs and Class Members.

82.    Electrolux failed to exercise reasonable care when it knew of the safety risks the dishwashers posed and failed to replace, repair or recall dishwashers it knew were unsafe and defective.

83.    As a direct and proximate result of Electrolux's negligence, Plaintiffs and Class Members bought the dishwashers without knowledge of their defective nature or of their serious safety risks.

84.    As a direct and proximate result of Electrolux's negligence, Plaintiffs and Class Members purchased unsafe products which could not be used for their intended use.

85.    As a direct and proximate result of Electrolux's negligence, Plaintiffs and Class Members have suffered damages.

86.    Plaintiffs and Class Members seek to recover the damage caused by Electrolux. In addition, given Electrolux's conscious disregard for the safety of Plaintiffs and Class Members, they also seek an award of exemplary damages.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT FAILURE TO WARN**
**(Individually and on Behalf of the Virginia Damages Class)**

87.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

88.     Electrolux knew, or by the exercise of reasonable care should have known, that the dishwashers were defective.

89.     Electrolux knew that Plaintiffs and Class Members, who used their dishwashers for their intended use, were members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience, expense and harm solely because of the defect.

90.     Electrolux owes a continuing duty to warn about the problem and to repair and/or recall the defective dishwashers.

91.     Electrolux had a pre-sale duty to warn potential purchasers that the dishwashers carried with them greater risks of failure and safety hazards than an ordinary consumer would expect when using the dishwashers in their intended or reasonably-foreseeable manner.

92.     As a direct and proximate result of Electrolux's wanton recklessness, carelessness, and negligence, Plaintiffs and Class Members suffered damages and losses, and will have to spend money to repair and/or replace the defective dishwashers and damage to other property.

**SIXTH CAUSE OF ACTION**
**INJUNCTIVE AND DECLARATORY RELIEF**
**(Individually and on Behalf of the National Classes)**

93.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

94.     There is an actual controversy between Electrolux and Class Members concerning the existence of the defect in the dishwashers.

95.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

96.     Accordingly, Plaintiffs and Class Members seek a declaration that the dishwashers have a common defect in their design and/or manufacture.

97.     Additionally, Plaintiffs and Class Members seek a declaration that this common defect poses a serious safety risk to consumers and the public.

98.     Electrolux designed, manufactured, produced, tested, inspected, marketed, distributed, and sold dishwashers which contain a material and dangerous defect as described herein.   Based upon information and belief, Electrolux continues to design, manufacture, produce, test, inspect, market, distribute, and sell dishwashers which contain a material and potentially dangerous defect as described herein.

99.     Based upon information and belief, Electrolux has taken no corrective action concerning the defect described herein, and has not issued any warnings or notices concerning the dangerous defect, nor implemented a dishwasher recall.

100.    Plaintiffs and the Class have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Electrolux dishwasher defect.  Electrolux should be required to take corrective action to prevent further injuries, including:  (a) issuing a nationwide recall of the dishwashers; (b) issuing warnings and/or notices to consumers and the Class concerning the defect; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective dishwashers described herein.

## SEVENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(Individually and on Behalf of the National Classes)**

101.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

102.    This claim is asserted in the alternative on behalf of Plaintiffs and Class Members, to the extent there is any determination that any contracts do not govern the subject matter of the disputes with Electrolux or that Plaintiffs do not have standing to assert any contractual claims asserted against Electrolux.

103.    Plaintiffs and Members of the Class conferred a benefit on Electrolux, of which benefit Electrolux had knowledge.   By its wrongful acts and omissions described herein, including selling the dishwashers, Electrolux was unjustly enriched at the expense of Plaintiffs and Class Members.

104.    Plaintiffs' and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

105.    It would be inequitable for Electrolux to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in connection with selling the dishwashers.

106.    Plaintiffs and Class Members seek restitution from Electrolux and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Electrolux from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

**EIGHTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(Plaintiffs, Individually and on Behalf of the Virginia Classes)**

107.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

108.     Electrolux concealed material facts from Plaintiffs and Class Members public. Electrolux knew that its dishwashers contained defective electrical systems but concealed those facts such that consumers in the United States had no such knowledge.

109.     Electrolux had a duty to disclose the Defect to Plaintiffs and Class Members, but it failed to do so.

110.     Electrolux also knew that Plaintiffs and Class Members had no knowledge that its dishwashers were defective and that they did not have an equal opportunity to discover the facts. Electrolux was in a superior position than Plaintiffs and Class Members.

111.     By failing to disclose the material facts concerning its dishwashers, Electrolux intended to induce Plaintiffs and Class Members into purchasing the dishwashers.

112.     Plaintiffs and Class Members would not have purchased the dishwashers had they known that they have defective electrical systems, or would not have paid as much as they did.

113.     Electrolux benefited from the sales of its dishwashers as a result of its nondisclosure.

114.     When Class Members experienced problems with their dishwashers, and called Electrolux to make any warranty claims, Electrolux routinely charged class members a fee to inspect their machines or otherwise determined—without inspection—that it would not cover the cost of repair or replacement. Alternatively, Electrolux routinely failed to honor its warranties

with consumers concerning the defect at issue because it did not offer consumers who experienced failure with their machines the necessary repair or replacement costs.

115.   As a direct and proximate cause of Electrolux's conduct, Plaintiffs and Class Members have suffered damages.

116.   Electrolux's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and Class Members such that punitive damages are appropriate.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.   An Order certifying this action as a class action;

B.   An Order appointing Plaintiffs as class representatives and appointing counsel undersigned to represent the Class;

C.   A Declaration that the Electrolux dishwashers are defective;

D.   An Order awarding injunctive relief by requiring Electrolux to issue corrective actions including notification, recall, inspection and, as necessary, repair and replacement of the dishwashers;

E.   Payment to the Class of all damages associated with the defective products, in an amount to be proven at trial;

F.   An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute;

H.      Such other and further relief as this Court may deem just, equitable, or proper.

Date: June 20, 2016                              Respectfully submitted,

                                                 WISE & DONAHUE, PLC

                                                 *James P. Lukes*

                                                 David Hilton Wise, VA Bar No. 30828
                                                 James P. Lukes, VA Bar No. 73752
                                                 10476 Armstrong Street
                                                 Fairfax, VA 22030
                                                 Tel: (703) 934-6377
                                                 Fax: (703) 934-6379
                                                 jlukes@wisedonahue.com
                                                 dwise@wisedonahue.com

                                                 *Attorney for Plaintiff's*

                                                 *Of Counsel:*

                                                 Matthew E. Lee
                                                 **WHITFIELD BRYSON & MASON LLP**
                                                 900 W. Morgan St.
                                                 Raleigh, North Carolina 27603
                                                 Tel:    919-600-5005
                                                 Fax:    919-600-5035
                                                 matt@wbmllp.com

                                                 Edward A. Wallace
                                                 Amy E. Keller
                                                 Adam Prom
                                                 **WEXLER WALLACE LLP**
                                                 55 W. Monroe St., Ste. 3300
                                                 Chicago, Illinois 60603
                                                 Tel:    312-346-2222
                                                 Fax:    312-346-0022
                                                 eaw@wexlerwallace.com
                                                 aek@wexlerwallace.com
                                                 ap@wexlerwallace.com

Gregory F. Coleman
Lisa A. White
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel:    865-247-0080
Fax:    865-522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Eric H. Gibbs
Steve Lopez
**GIBBS LAW GROUP LLP**
One Kaiser Plaza, Suite 1125
Oakland, California 94612
Tel:    (510) 350-9700
Fax:    (510) 350-9701
ehg@classlawgroup.com
sal@classlawgroup.com

Shanon Carson
Arthur Stock
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel:    215-875-5704
Fax:    215-875-4604
scarson@bm.net
astock@bm.net

*Attorneys for Plaintiffs and the Putative Class
Members*